848 So.2d 1259 (2003)
AVATAR PROPERTIES, INC., Appellant/Cross Appellee,
v.
N.C.J. INVESTMENT COMPANY, et al., Appellee/Cross Appellant.
Nos. 5D02-1252, 5D02-1253.
District Court of Appeal of Florida, Fifth District.
July 11, 2003.
*1260 John R. Hamilton of Foley & Lardner, P.A., Orlando, for Appellant/Cross Appellee.
Scott A. McLaren and Lynn C. Hearn of Hill, Ward & Henderson, P.A., Tampa, for Appellee/Cross Appellant.
THOMPSON, J.
Avatar Properties, Inc., appeals an order confirming an arbitration award, and N.C.J. Investment Company cross appeals the order. We affirm.
In June 1979, Avatar, then known as GAC Properties, sold a parcel of land to Osceola Petroleum Company, Inc. The deed provided that the seller had the right to repurchase the property if the buyer or its assigns, agents, or operators failed to operate the gas station "to be built," for ninety days. The deed provided that the repurchase price was to be set by arbitration between the parties under the terms of the American Arbitration Association.
Henry Barkett obtained title from Osceola and allegedly failed to operate a gas station for more than 90 days. In April 1990, having previously offered Barkett $150,000 for the property, Avatar demanded arbitration. During arbitration, Barkett stipulated that gasoline service had been unavailable for more than 90 days. Also during arbitration, Barkett filed a declaratory judgment action, seeking a ruling on whether Avatar would be required to repurchase the property once the price was established at arbitration. In December 1995, Avatar and Barkett entered a settlement agreement which stayed both proceedings. The agreement called for Barkett to make certain renovations, and to pay Avatar $40,000 upon completion of the renovations. In the event the conditions of the agreement were not met, the stay would cease. Also, the parties would be in the same position vis-a-vis the arbitration and declaratory judgment action as they were before the agreement was entered.
Later, Barkett transferred ownership of the property, and the transferee conveyed it to 3G Properties, which leased it to N.C.J. in January 1995. In July 1996, Avatar and N.C.J. entered what is referred to as a "redevelopment agreement" under which N.C.J. would remodel the facility and pay Avatar 2% of sales. Also, Avatar guaranteed N.C.J. five years of exclusivity in the area with respect to certain sales. It is disputed whether this was a completed contract. Seven months later, N.C.J. purchased the property from 3G. As part of the purchase, N.C.J. signed an "Acknowledgment," agreeing that Barkett owed Avatar $40,000 under the settlement agreement, that N.C.J. would make the payment, and that N.C.J. would hold 3G harmless with respect to the $40,000. N.C.J. and 3G agreed that N.C.J. did not assume any other responsibilities under any settlement agreement reached with Avatar at any time.
In the Fall of 1999, Avatar re-opened the arbitration proceeding between it and Barkett. N.C.J. wrote to the American *1261 Arbitration Association stating that it had an interest in the outcome of the proceeding and asked for a copy of the original demand for arbitration and copies of future correspondence. In January 2000, Avatar joined N.C.J. to the arbitration proceeding. N.C.J. told the American Arbitration Association that it did not have jurisdiction over N.C.J. and that N.C.J. declined to join an arbitration designed to establish a price for property that Avatar had no right to acquire. Neither Barkett nor N.C.J. appeared at the arbitration. The arbitrator entered an award providing that the market value of the property was $180,000 after deducting environmental clean-up costs.
Avatar petitioned the circuit court to confirm the arbitration award and to enter a judgment declaring that Avatar was entitled to purchase the property for $180,000. N.C.J. filed a motion to dismiss, arguing that N.C.J. had not been a party to the arbitration and did not participate in it. Because the arbitration was flawed, N.C.J. argued, the court did not have jurisdiction. The court confirmed the award, but declined to rule, as requested by Avatar, that N.C.J. was required to deed the property to Avatar upon Avatar's tendering $180,000. The court stated that if Avatar wanted the title, it would probably have to sue for specific performance.
On appeal, Avatar argues that the court erred in declining to rule that N.C.J. would be required to transfer title to Avatar upon Avatar's tendering the price established at arbitration. Avatar argues such a determination was implicit in the arbitrator's award. We do not agree because the arbitrator was never asked to decide whether N.C.J. should be required to transfer title upon tender of the market value established at the arbitration. It is not unusual for parties to a contract to agree to submit certain matters, especially of valuation, to arbitration, but to leave other matters for the court system. Compare State Farm Fire and Cas. Co. v. Licea, 685 So.2d 1285 (Fla.1996) (holding that appraisal provision in homeowner's insurance policy in which insurer also "retained rights" did not lack mutuality of obligation where retention of rights clause was interpreted to mean right to litigate issue of coverage rather than amount of loss). Here, the deed restriction only requires the parties to settle the issue of price through arbitration:
The seller shall have the right to repurchase that portion of the property, used as a retail Gas-Service Station in the event that the Buyer, or its assigns, agents or operators fail to operate the gasoline filling station to be built for a period of ninety (90) days during a time when gasoline and fuel is generally available. The purchase price in the event of such a transaction shall be set by arbitration between the parties under the terms of the American Arbitration Association but shall not be less than the amount of any outstanding first mortgage on the property.
We also note that Avatar and Barkett stipulated that the arbitrator would have "the authority to determine value only," and when Barkett sought clarification about whether Avatar would be required to purchase the property once the price was established, Avatar argued in response: "It is the position of Avatar that the sole issue before this panel is the evaluation of the property in question."
Furthermore, the only finding made by the arbitrator concerned the market value of the property:
As of the date of exercise of the right to repurchase, to wit: March 12, 1990, which the arbitrator determines to be the appropriate date for valuation, [the] fair market value of the property was *1262 $425,000 less the reasonable cost of remediation of then existing contamination of which the arbitrator finds to be $245,000 ... rendering the true market value to be $180,000 as of March 12, 1990.
It is true that the arbitrator referred to the "exercise of the right" to repurchase, but we cannot construe that language to imply a determination that Avatar had the right to repurchase, because the arbitrator was merely setting the valuation date. Perhaps it would have been better for the arbitrator to have referred to the assertion of the right to repurchase, but we cannot read into the award a determination the arbitrator was not authorized to make. See Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327 (Fla.1989) (holding that an arbitrator exceeds his or her power by going beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration).
We also reject Avatar's claim that it would have been proper for the trial court to expand upon the arbitration award in order to give "complete relief." See Goldman v. Chang, 622 So.2d 30 (Fla. 3d DCA 1993) (trial court was without power, authority, or jurisdiction to enter an award of damages where arbitration panel had not intended to do so).
On cross appeal, N.C.J. argues that the court erred in confirming the award because the arbitration provision did not bind N.C.J. We conclude that N.C.J. has waived this argument by failing to avail itself of the statutory procedure for making it. Section 682.13(1)(e), Florida Statutes, requires a court to vacate an arbitration award if "[t]here was no agreement or provision for arbitration subject to this law...." Assuming N.C.J.'s motion to dismiss should be construed to be a motion to vacate the award, it was untimely because section 682.13(2), Florida Statutes, provides that an application to vacate an arbitration award "shall be made within 90 days after delivery of a copy of the award to the applicant," unless the award is predicated on fraud or corruption. There is no dispute that N.C.J. failed to contest the award within 90 days of its receipt of the award. N.C.J. also could have, but did not, seek relief when Avatar joined it to the arbitration: section 682.03(4), Florida Statutes, provides that a court may "stay an arbitration proceeding commenced or about to be commenced, if it shall find that no agreement or provision for arbitration subject to this law exists between the party making the application and the party causing the arbitration to be had." N.C.J. argues that sections 682.13(1)(e) and 682.03(4) presuppose an arbitration agreement between the parties, but that argument is untenable in light of the language of these provisions, which clearly contemplate a situation in which one party claims there is no arbitration agreement to which it is bound. Indeed, section 682.12 requires the trial court to confirm an award, "unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award."
N.C.J. further argues that it did not waive the issue of the arbitrator's "jurisdiction" because it is a matter that can be raised at any time, just as the issue of a court's jurisdiction can be raised at any time. This argument was rejected in City of West Palm Beach v. Palm Beach County Police Benevolent Association, 387 So.2d 533 (Fla. 4th DCA 1980):
With regard to subject matter jurisdiction, appellant urges that jurisdiction over the subject matter cannot be conferred on a tribunal by either failure to object or by consent. Appellant then suggests that this rule is equally applicable *1263 to arbitration proceedings. We concur in the first suggestion but reject its extension to arbitration proceedings. The jurisdiction of courts arises from constitutional, statutory or common law authority. The parties may not confer jurisdiction by waiver, failure to object, or consent, where none is given by law. Wilds v. Permenter, 228 So.2d 408 (Fla. 4th DCA 1969); Dicaprio v. State, 352 So.2d 78 (Fla. 4th DCA 1977). On the other hand, jurisdiction in arbitration proceedings is conferred by the agreement of the parties and is circumscribed by the terms of that agreement.
Id. at 534; see also Burt v. Duval County School Bd., 481 So.2d 55 (Fla. 1st DCA 1985) (concluding that the issue between the parties was arbitrable under the contract, but that the school board, having failed to comply with the 90-day provisions in § 682.13 and § 683.14, could not, in any event, challenge the arbitrator's jurisdiction in the proceeding for confirmation). Because N.C.J. did not contest the award within the time limits, the court properly confirmed it.[1]
Finally, N.C.J. argues that the confirmation order was erroneous because the court ruled therein that Avatar was entitled to repurchase the property. Like the arbitrator whose award was being confirmed, the trial court referred to the "exercise" of the right to repurchase, but we do not read the order to rule on Avatar's entitlement. The order simply confirms the price and valuation date set by the arbitrator. We note that the court specifically rejected Avatar's suggestion that it make a ruling that Avatar would be entitled to repurchase the property if it tendered the amount established by the arbitrator.
AFFIRMED.
SAWAYA, C.J., and TORPY, J., concur.
NOTES
[1] We do not think Ruffin v. Kingswood E. Condominium Association, Inc., 719 So.2d 951 (Fla. 4th DCA 1998) is on point because the authority of the arbitrator in that setting was circumscribed by the statute requiring arbitration.