998 So.2d 4 (2008)
Gabriel A. TOIBERMAN, Appellant,
v.
Maria J. TISERA, Appellee.
No. 3D07-1160.
District Court of Appeal of Florida, Third District.
October 8, 2008.
Rehearing and Rehearing En Banc Denied January 13, 2009.
*5 Dirk Lorenzen, for appellant.
Weiss & Kahn and Owen E. Kahn, Coral Gables, for appellee.
Before GREEN, RAMIREZ, and CORTIÑAS, JJ.
CORTIÑAS, J.
Appellant, Gabriel A. Toiberman ("Husband"), seeks review of an arbitrator's award, which was titled as a "Final Judgment of Dissolution of Marriage" (the "Award") and subsequently approved by the trial court in a written order. The Award was issued following binding arbitration proceedings between the Husband and appellee, Maria J. Tisera ("Wife"), and encompassed numerous issues between the parties, including, but not limited to, child custody, visitation, child support, alimony, and equitable distribution of assets. The agreement ("Agreement") under which the parties originally agreed to arbitrate provided:
The parties hereto have agreed to binding arbitration [of] all of the issues in this case on December 5th and 6th, 2006 before Judge John Gale, Retired.
(Emphasis added).
The question before us is whether the language of the Agreement, wherein the parties opted to arbitrate all "issues" between them, contravenes section 44.104, Florida Statutes (2006), which specifically forbids arbitration of disputes involving child custody, visitation, or child support.
Section 44.104, Florida Statutes (2006), provides, in pertinent part:
(1) Two or more opposing parties who are involved in a civil dispute may agree in writing to submit the controversy to voluntary binding arbitration, or voluntary trial resolution, in lieu of litigation of the issues involved, prior to or after a lawsuit has been filed, provided no constitutional issue is involved.
. . . .
(14) This section shall not apply to any dispute involving child custody, visitation, or child support....
Section 44.104(1), (14), Florida Statutes (2006) (emphasis added).
In construing the language of a statute, courts are required to first consider the actual language of the statute. Woodham v. Blue Cross & Blue Shield, Inc., 829 So.2d 891, 897 (Fla.2002) (citations omitted); Campbell v. Kessler, 848 So.2d 369, 371 (Fla. 4th DCA 2003) (finding that a court "must interpret and construe a statute according to the precise language adopted by the legislature") (quoting Fla. Gulf Health Sys. Agency Inc. v. Comm'n on Ethics, 354 So.2d 932, 933 (Fla. 2d DCA 1978)). "[T]he intent of the legislature must guide our analysis, and that intent must be determined primarily from the language of the statute." Hale v. State, 891 So.2d 517, 521 (Fla.2004) (citing Miele v. Prudential-Bache Sec. Inc., 656 So.2d 470, 471 (Fla.1995)).
*6 The plain language of section 44.104(14) prohibits binding arbitration of child custody, visitation, or child support matters, as was done in this particular case. Accordingly, there is no question that the portion of the Award that pertains to child custody, visitation, or child support must be vacated and reversed. Next, we consider whether the remaining portions of the Award, such as the alimony award, may be upheld. This determination depends on the meaning of "dispute" within section 44.104. Consequently, we must examine whether a lawsuit that involves issues of child custody, visitation, and child support is excluded from arbitration in its totality or whether arbitration is precluded only as to the individual issues of child custody, visitation, or child support.
We begin by acknowledging that the term "dispute," as it appears in section 44.104, is ambiguous and susceptible to different interpretations. See Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004) ("Ambiguity suggests that reasonable persons can find different meanings in the same language.") (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)). Accordingly, we must look beyond the plain meaning of the statute. See Weber v. Dobbins, 616 So.2d 956, 958 (Fla. 1993); see also Bautista v. State, 863 So.2d 1180, 1185-86 (Fla.2003). Moreover, we are not aware of any case law interpreting the application of the term "dispute" in section 44.104.
When reviewing the use of the term "dispute" throughout other portions of Chapter 44 as well as the legislative history of portions of Chapter 44, it becomes evident that the legislature intended for the term "dispute" to address the entirety of a legal action between parties, and not merely individual claims that involve child custody, visitation, or child support issues. In 1989, the legislature amended Chapter 44 by passage of Senate Bill 237. See Ch. 89-31, §§ 3-4, 1989 Fla. Laws 48. The amendments to Chapter 44, included in pertinent part:[1]
44.302 Court-ordered mediation.
(1) Except as provided by rules promulgated by the Supreme Court, a court:
a. May refer all or any portion of a contested civil action filed in a circuit court in which there is a dispute as to any issue; or
. . . .
44.304 Voluntary binding arbitration.
(12) This section shall not apply to any dispute involving child custody, visitation, or child support, or to any dispute which involves the rights of a third party not a party to the arbitration.[2]
Ch. 89-31, §§ 3-4, 1989 Fla. Laws 49-50.[3]
The legislature's use of both the words "dispute" and "issue" in the amendment to section 44.302(1)(a) contrasts to the sole use of the term "dispute" in the amendment to section 44.304(12). Clearly, "dispute" and "issue" were intended to have different meanings and certainly were not meant to be used interchangeably. Had the legislature intended to solely preclude specific claims or issues of child custody, visitation, and child support from arbitration, it would have used more specific language *7 identifying that the issues themselves could not be arbitrated. Instead, the legislature used the significantly broader "dispute" as the focus of its proscription, thereby indicating that an entire legal action involving issues of child custody, visitation, and child support is not subject to arbitration.
The language of Chapter 44 in effect during the arbitration between the Husband and the Wife also provided in pertinent part:
44.1011 Definitions.  As used in this chapter:
. . . .
(2) "Mediation" means a process whereby a neutral third person called a mediator acts to encourage and facilitate the resolution of a dispute between two or more parties. It is an informal and nonadversarial process with the objective of helping the disputing parties reach a mutually acceptable and voluntary agreement. In mediation, decisionmaking authority rests with the parties. The role of the mediator includes, but is not limited to, assisting the parties in identifying issues, fostering joint problem solving, and exploring settlement alternatives.
Section 44.1011(2), Florida Statutes (2006) (emphasis added).
In defining "mediation" within Chapter 44, the legislature, once again, clearly distinguished between the terms "dispute" and "issues." As is evident by the plain language of the mediation statute, "dispute" refers to the entire action between the parties and not to individual claims or issues. The legislature explicitly distinguished "dispute" from "issues" in stating that the mediator's ultimate goal is encouraging and facilitating a resolution of the "dispute" between the parties, and in doing so, one of the mediator's roles is assisting the parties in identifying the "issues" that underlie or comprise the greater "dispute." See Id. This language further demonstrates that the legislature envisioned different meanings for "dispute" and "issues," where "issues" describe the finer points of contention between parties that ultimately comprise the totality of the "dispute."
Based on the foregoing, we hold that the term "dispute" in section 44.104(1) and (14), Florida Statutes (2006), was intended by the legislature to reference the complete action between the parties, as opposed to the "issues involved" in the dispute. Thus, by specifying that section 44.104 "shall not apply to any dispute involving child custody, visitation, or child support," the legislature intended to exclude from arbitration all lawsuits that involve issues of child custody, visitation, or child support. See section 44.104(14), Florida Statues (2006) (emphasis added).
Our holding is further supported by the interrelation that exists between alimony and child support considerations, which require these to be considered simultaneously. Florida courts have held that issues of alimony and child support are interrelated and should be considered simultaneously.
[A] judge possesses broad discretionary authority to do equity between the parties and has available various remedies to accomplish this purpose, including lump sum alimony, permanent periodic alimony, rehabilitative alimony, child support, a vested special equity in property, and an award of exclusive possession of property; these remedies are interrelated; their eventual use in [a] given case makes them part of one overall scheme that must be reviewed by appellate courts as a whole.
Levine v. Levine, 964 So.2d 741, 742 (Fla. 4th DCA 2007) (emphasis added) (citing *8 Canakaris v. Canakaris, 382 So.2d 1197, 1202 (1980)). Because issues of alimony and child support are interrelated, there is not a single case that has allowed binding arbitration of an alimony award while contemporaneously affording judicial review of child custody, visitation, and child support issues. Thus, bifurcation of such clearly interrelated issues within a lawsuit would be not only sui generis, but also imprudent and illogical.
While our esteemed colleague in dissent makes a compelling case for affirmance based on non-preservation of error, we must be mindful that this case involved a wholly illegal procedure prohibited by statute. Fundamental or plain error, such as this one, is not waived simply because the parties and the trial court ignored the clear statutory prohibition against arbitration of cases involving child custody, visitation, and child support. Fundamental error, which can be considered on appeal without objection in the lower court, is error which goes to the foundation of the case or goes to the merits of the cause of action. Sanford v. Rubin, 237 So.2d 134 (Fla.1970) (Finding that fundamental error may be raised for the first time on appeal). Surely, if we were reviewing a criminal case that had been improvidently submitted to arbitration by consent of the parties and acquiescence by the trial judge, few would argue for the preclusion of appellate review even in the absence of a preserved objection. Similarly, family law cases involving child custody, visitation, and child support are among a very small subset of cases which are statutorily prohibited from arbitration. This evidences clear public policy considerations that were properly made by the Florida legislature. As courts of law, we are compelled to abide by the plain statutory prohibition against arbitration of such cases whether or not the objection to arbitration was first raised in the trial court or in appellate proceedings.
In Nashid v. Andrawis, 83 Conn.App. 115, 847 A.2d 1098 (2004), a case strikingly similar to the one before us, the parties agreed to proposed orders that specifically delegated matters within judicial authority to binding arbitration. See Id. at 1101-02. The trial court included in its dissolution decree the proposed, agreed-upon orders which required that issues relating to parenting access scheduling be submitted to binding arbitration. Id. The issue of improper delegation of judicial authority was not raised at trial. Id. at 1101. The Nashid court reviewed this issue under the plain error doctrine. Id. Such review "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." Id. (quoting Grayson v. Wofsey, Rosen, Kweskin & Kuriansky, 231 Conn. 168, 646 A.2d 195 (1994)). The court stated that:
It is well settled authority that "[n]o court in this state can delegate its judicial authority to any person serving the court in a non-judicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended."
Id. at 1101 (quoting Cotton v. Cotton, 11 Conn.App. 189, 526 A.2d 547, 550 (1987)).
After reviewing the parties' agreement to arbitrate, the Nashid court found that there was no express language restricting the breadth of issues to be resolved in binding arbitration. Id. at 1102. However, the unrestricted authority granted to the arbitrator contravened Connecticut General Statute § 46b-56 which required that "[a] court exercising its equitable jurisdiction *9 with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children...." Id. (quoting Bouchard v. Sundberg, 80 Conn.App. 180, 834 A.2d 744, 751 (2003)). Because the arbitrator was provided with the power to review a matter statutorily placed within judicial authority, the court concluded that there was plain error in the trial court's orders and required that they "be modified to delete the delegation of judicial authority...." Id.
Similarly, the situation presented for our review involves an agreed order submitting the entire case to binding arbitration. The issue of delegating judicial authority in violation of section 44.104(14) of the Florida Statutes was not raised during trial. However, as in Nashid, we find that it was plain error for the trial court to delegate its judicial authority to an arbitrator to decide matters relating to child custody, visitation, or child support as mandated in section 44.104(14), Florida Statutes. Because this case involved issues of child custody, visitation, and child support, and was therefore proscribed from arbitration by section 44.104, Florida Statutes (2006), we reverse the trial court's order approving the Award, vacate the entire Award, and remand for further proceedings.
Reversed and Remanded.
RAMIREZ, J., concurs.
GREEN, J. (dissenting).
I must respectfully dissent from the majority opinion because it fails to recognize that our standard of judicial review of a statutory arbitration award is extremely limited. Where, as here, the former husband failed to timely challenge this arbitration award in the trial court on an appropriate enumerated statutory basis, this court lacks authority to vacate this award on appeal under well established Florida law. Accordingly, I would affirm the final judgment under review.

Background
The parties to this appeal were married on December 24, 2001, and separated in February 2006. Two minor daughters were born of this marriage. Prior to the marriage, the former wife was employed as a physical therapist in Italy and later as a personal trainer in the United States. Once her children were born, she gave up her career as a personal trainer to become a full-time homemaker. The former husband has ownership interests in several business entities, including Safari Tours, Inc., a tour company that operates a fleet of buses, limousines, and vans in South Florida. The parties enjoyed a high standard of living during their marriage.
The former wife petitioned for a dissolution of the marriage in March 2006 and joined, as third parties: Gasa Corporation; Lindoso Turismo, Inc.; Safari Express Transportation & Operator, Inc.; Safari Tours, Inc.; Cora Toiberman (former husband's sister); Margarita Toiberman (former husband's mother); and Jorge Toiberman (former husband's father). The former husband, through counsel, answered the petition and filed a counter-petition for dissolution of marriage. Counsel for the former husband also filed individual answers on behalf of each of the respective third parties.
Once this case was at issue, the trial court referred this case to mediation. The parties and their respective counsel selected retired Circuit Court Judge John Gale, of Private Judges, Inc., to serve as their mediator. After their efforts at mediation failed, the former husband and former wife, along with their respective counsel, decided to submit this case to binding arbitration before Retired Judge Gale. This *10 then became what is commonly referred to as a "Med-Arb" proceeding. The former husband and former wife executed a settlement agreement wherein they agreed to submit to binding arbitration all issues involved in this case before arbitrator John Gale on December 5-6, 2006. This settlement agreement was submitted to the trial court for approval. In an agreed order dated November 8, 2006, the trial court approved and adopted this settlement agreement submitting this entire case to binding arbitration. The court also reserved jurisdiction to enforce the terms of the agreed order.

ARBITRATION PROCEEDING
The arbitration hearing was conducted over a two-day period. Neither party elected to have a court reporter present, although they were advised of this right. After the two day arbitration hearing, which included the appearance and testimony of the third parties, the arbitrator issued his award in the form of a final judgment of dissolution of marriage dated February 1, 2007.
The arbitrator's award dissolved the marriage; awarded shared parental responsibility, with the children to reside with the former wife; and established arrangements for visitation, vacations and communications. Additionally, the arbitrator's award ordered, among other things, the former husband to pay child support in the total amount of $3,000 per month plus the cost of the children's health insurance; and to pay the former wife alimony at the rate of $6,000 per month as non-modifiable periodic alimony for six years. Thereafter, the former husband was to pay $9,800 per month in alimony and child support combined. The alimony was to end after six years, or earlier if the wife died or remarried.
In his determination of equitable distribution issues, the arbitrator initially determined that the former husband's assets exceeded $3,400,000 and that the former wife had a negative net worth. Based upon the arbitrator's findings that six properties were "acquired and/or funded and/or maintained with marital funds and paid for by the former husband and concealed from the [former] wife, the former wife was awarded a total equitable distribution of $1,110,375. The parties were ordered to sell the marital residence, with the net proceeds going to the former wife, as partial equitable distribution. The former husband was then to pay the balance in twenty-four monthly installments. The contents of the marital home were ordered to be equitably distributed.
The former husband was ordered to pay the former wife's reasonable attorney's fees and costs. However, the arbitrator ordered the parties to equally split the payment of his mediation and arbitration fees. Finally, the arbitrator's award reserved jurisdiction unto the arbitrator "for the enforcement of any and all provisions herein and any [sic] all other matters encompassed in all prior orders of this court." The former husband has asserted on this appeal that this arbitration award was served on the parties on March 19, 2007.[4]

COURT PROCEEDINGS BELOW
The arbitrator's award was filed with the trial court. In a March 23, 2007, order, the trial court approved and ratified the arbitration award in toto, including the proviso that the arbitrator retain jurisdiction for the enforcement of any and all provisions contained in the order. The *11 Final Judgment for Dissolution of Marriage was recorded on March 6, 2007.
On April 5, 2007, the former husband, through counsel, filed a motion for rehearing wherein he challenged the amounts awarded for alimony and child support; evidence as to the valuation of his business, Safari Tours; amount of cash he was found to have on hand; equitable distribution awards; and requirement that he pay the former wife's attorney's fees and costs. He never scheduled this motion for hearing.
The former wife, thereafter, filed a motion for contempt and a rule to show cause asserting that the former husband had failed to abide by the terms of the final judgment of dissolution by: violating the visitation schedule; failing to pay child support; failing to provide her with a copy of his life insurance policy designating their minor children as irrevocable beneficiaries; failing to pay the prescribed alimony; failing to make necessary repairs to the marital home so that it could be sold; failing to pay for repairs to or to replace the former wife's vehicle; and failing to pay the former wife's attorney's fees and costs. This motion was noticed and scheduled for hearing before the arbitrator on April 16, 2007. On that date, however, the former husband moved to abort the hearing on the grounds that the arbitrator was without power to enforce the terms of the award. The arbitrator rescheduled the contempt hearing to permit the parties' to seek clarification from the trial court as to the arbitrator's authority to hear the contempt proceeding.
The trial court concluded that the arbitrator had exceeded his authority in retaining jurisdiction for the enforcement of the arbitration award where the parties had not agreed to the same. Accordingly, the trial court issued an amended order approving the arbitrator's final award, except for the provision allowing the arbitrator to retain jurisdiction for enforcement purposes. This appeal ensued.

APPEAL
On appeal, the former husband attacks the final judgment of dissolution on the following grounds: (1) it is void for lack of subject matter jurisdiction because cases involving child custody visitation or child support are not subject to voluntary arbitration; (2) it is void because it adjudicated the rights of third parties who did not consent to arbitration; (3) the arbitrator had a conflict of interest arising from his prior service as a mediator, which rendered the proceedings unfair; (4) the arbitrator entered a final judgment; (5) the arbitrator's award of non-modifiable alimony is legally incorrect; (6) the arbitrator failed to make findings necessary to support equitable distribution; and (7) the arbitrator adopted the final judgment as drafted by the former wife in violation of Perlow v. Berg-Perlow, 875 So.2d 383 (Fla. 2004).
The former wife counters that the former husband's appeal fails because he did not timely seek to vacate the arbitrator's award on one of the statutorily enumerated grounds in section 682.13(1), Florida Statutes (2007), of the Florida Arbitration Code. Alternatively, she argues: (1) that the Florida Arbitration Code, Chapter 682, rather than the Mediation Statute in Chapter 44, controls this case and that the Florida Arbitration Code does not prohibit the arbitration of disputes involving child custody, visitation, or child support; (2) that the third party defendants waived the judicial determination of any arbitrable issue by their extensive participation in the arbitration proceeding; (3) that the former husband cannot make a prima facie case that the arbitrator had a conflict of interest; (4) that the arbitrator issued an arbitral *12 decision that was approved by the trial court; (5) that the former husband's factual and/or legal challenge to the arbitrator's findings are not cognizable statutory grounds for setting aside the decision of an arbitrator; and (6) that the former husband has no competent evidence that the arbitrator adopted the former wife's final judgment.
I conclude that we are without statutory authority to vacate this arbitration award or any portion thereof. Accordingly, the final judgment must be affirmed for the following reasons.

LEGAL ANALYSIS

The Florida Arbitration Code
On this appeal, the former husband seeks to vacate an arbitration award entered pursuant to a written, voluntary arbitration agreement that he executed with the former wife for the resolution of their dissolution action. As a threshold matter, it must be pointed out that under established Florida law, the standard of judicial review applicable to challenges to arbitration awards is extremely limited and "a high degree of conclusiveness attaches to an arbitration award because the parties themselves have chosen to go this route in order to avoid the expense and delay of litigation ... The arbitrator is the sole and final judge of the evidence and the weight to be given it." City of West Palm Beach v. Palm Beach County Police Benevolent Ass'n., 387 So.2d 533, 534 (Fla. 4th DCA 1980) (quoting Affiliated Marketing, Inc. v. Dyco Chem. & Coatings, Inc., 340 So.2d 1240, 1242 (Fla. 2d DCA 1976)). As was initially explained by the Florida Supreme Court in Johnson v. Wells, 72 Fla. 290, 73 So. 188, 190-91 (1916), and reiterated in Schnurmacher Holding, Inc. v. Noriega, 542 So.2d 1327, 1328-29 (Fla.1989):
The reason for the high degree of conclusiveness which attaches to an award made by arbitrators is that the parties have by agreement substituted a tribunal of their own choosing for the one provided and established by law, to the end that the expense usually incurred by litigation may be avoided and the cause speedily and finally determined. To permit the dissatisfied party to set aside the award and invoke the judgment of the court upon the merits of the cause would be to render it merely a step in the settlement of the controversy, instead of a final determination of it.
Notwithstanding the high degree of conclusiveness of an arbitrator's award, however, the legislature in section 682.13(1), of the Florida Arbitration Code, has enumerated five grounds upon which an arbitration award may be vacated by timely motion:
a) The award was procured by corruption, fraud, or other undue means.
b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or umpire or misconduct prejudicing the rights of any party.
c) The arbitrators or the umpire in the course of her or his jurisdiction exceeded their powers.
d) The arbitrators or the umpire in the course of her or his jurisdiction refused to postpone the hearing upon sufficient cause being shown therefore or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of s. 682.06, as to prejudice substantially the rights of a party.
e) There was no agreement or provision for arbitration subject to this law, unless the matter was determined in proceedings under s. 682.03 and unless the party participated in the arbitration hearing without raising the objection.

*13 But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
§ 682.13(1), Fla. Stat. (2007). These are the sole grounds upon which an arbitration award may be challenged or vacated under the Florida Arbitration Code. See Verzura Constr., Inc. v. Surfside Ocean, Inc., 708 So.2d 994, 995 (Fla. 3d DCA 1998). In fact, in the absence of one of these five enumerated grounds, neither a trial court nor a District Court of Appeal has the authority to overturn an arbitration award. See Schnurmacher Holding, Inc., 542 So.2d 1327, 1328; Moya v. Bd. of Regents, 629 So.2d 282, 284 (Fla. 5th DCA 1993). Moreover, a trial court must confirm an arbitration award upon application of any party to the award unless, within ninety (90) days after receipt of the arbitration award, a party thereto has filed a motion with the court to vacate, modify, or correct the award. See § 682.13(2), Fla. Stat. (2007); Moya, 629 So.2d at 284. This ninety-day limit is subject to one exception: if a motion to vacate the award is based on corruption, fraud, or other undue means, the motion must be filed within ninety days after such grounds are known or should have been known to the injured party. § 682.13(2); Moya, 629 So.2d at 284. If an appropriate motion to vacate, modify, or correct the award is not filed within the applicable time periods, the court has no alternative but to confirm the arbitration award. § 682.13(2); Moya, 629 So.2d at 284.
In this case, the former husband never moved to vacate the arbitrator's award on any of these statutory grounds within the prescribed ninety-day period following his receipt of the award.[5] For this reason alone, our affirmance is mandated on this appeal. See American Reliance Ins. Co. v. Devecht, 820 So.2d 378 (Fla. 3d DCA 2002). Although the former husband did timely file a motion for rehearing in the trial court, wherein he sought to challenge various factual and legal determinations by the arbitrator, this motion cannot properly be treated by us as a motion to vacate pursuant to section 682.13(2) for two reasons.
First of all, the former husband never sought any determination of this motion for rehearing prior to filing this notice of appeal. As a result, the grounds raised in this motion are deemed to have been abandoned on appeal. See State v. Pearson, 156 So.2d 4 (Fla.1963); Brumlik v. Catalyst, Inc., 463 So.2d 240 (Fla. 5th DCA 1984); SAC Constr. Co. v. Eagle Nat'l Bank of Miami, 449 So.2d 301 (Fla. 3d DCA 1984). Secondly, even if his motion for rehearing had been entertained by the trial court, his factual and legal challenges to the arbitrator's award in the motion for rehearing were nevertheless insufficient to vacate this award under section 682.13(1).[6] *14 See Verzura Constr., Inc. v. Surfside Ocean Inc., 708 So.2d at 996 ("The law is clear that awards made by arbitration panels cannot be set aside for mere error of judgment as to the law or to the facts; if the award is within the scope of submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment.")

The Florida Mediation Statute
Apparently mindful of the statutory limitations to our vacating this arbitration award under the Florida Arbitration Code, the former husband argues for the first time on appeal that the award is void for lack of subject matter jurisdiction pursuant to section 44.104(14), of the Florida Mediation Statute. That section merely states as follows: "This section shall not apply to any dispute involving child custody, visitation, or child support." The clear and plain language of this subsection does not support the majority's holding that family matters involving child custody, visitation, or child support may not be nevertheless arbitrated under Chapter 682. As we pointed out in Schulberg v. Schulberg, 883 So.2d 352, 356 n. 4 (Fla. 3d DCA 2004), "[w]hile this language would preclude the use of section 44.104 for such a dispute, it leaves open the question whether an arbitration clause excluded from 44.104 might nonetheless be enforceable under chapter 682, Florida Statutes."
In this case, the former husband is making the argument that section 44.104(14) is jurisdictional. As such, he argues that a violation of this statute may be raised outside of the ninety-day time constraint of section 682.12(2). Assuming, without deciding, that section 44.104(14) is a jurisdictional statute, the former husband is nevertheless incorrect as a matter of law.
It is certainly true that subject matter jurisdiction cannot be conferred on a court by waiver, failure to object, or consent of the parties where none is given by law. Wilds v. Permenter, 228 So.2d 408 (Fla. 4th DCA 1969); Dicaprio v. State, 352 So.2d 78 (Fla. 4th DCA 1977). The same, however, cannot be said of jurisdiction to an arbitration proceeding. "[An] arbitrator's jurisdiction derives from the parties' agreement and can broaden during the course of arbitration `by waiver, failure to object and consent.'" LeNeve v. Via South Florida, L.L.C., 908 So.2d 530, 534-35 (Fla. 4th DCA 2005) (quoting City of West Palm Beach v. Palm Beach County Police Benevolent Ass'n, 387 So.2d 533, 534 (Fla. 4th DCA 1980)); Avatar Props., Inc. v. N.C.J. Inv. Co., 848 So.2d 1259, 1262-63 (Fla. 5th DCA 2003) ("Jurisdiction in arbitration proceedings is conferred by the agreement of the parties and is circumscribed by the terms of that agreement."); Burt v. Duval County School Bd., 481 So.2d 55 (Fla. 1st DCA 1985) (where the issue between the parties was arbitrable under their contract but the school board failed to comply with the 90-day provision in Sections 682.13 and 683.14, it could not challenge the arbitrator's jurisdiction in the proceeding for confirmation.)
It is undisputed in this case that the former husband, upon the advice of counsel, knowingly submitted all of the issues of this dissolution action to arbitration. It is also undisputed that even if the parties and/or the trial court legally erred in submitting any or all of these issues to arbitration, the former husband never timely sought to vacate this arbitration award on any of the enumerated statutory grounds *15 in the trial court below. Because he did not appropriately contest the award within the prescribed time limits, the trial court below properly confirmed this arbitration award. See Avatar Properties, Inc., 848 So.2d at 1263. I have located no authority, statutory or otherwise, for an appellate court to reverse and vacate an arbitration award under such circumstances and the majority opinion certainly offers no such authority.[7]
Given our limited standard of judicial review on challenges to arbitration awards, I therefore conclude that if section 44.104(14) is to serve as an additional basis for an appellate court to vacate an arbitration award, either within or outside of the ninety-day time constraints of section 682.13(2), it must be done by legislative enactment rather than judicial fiat, as my brothers in the majority have done.[8]
Accordingly, I believe that we are compelled to affirm the trial court's confirmation of this arbitration award.
NOTES
[1] Sections 44.302 and 44.304, Florida Statutes, were later renumbered as sections 44.102 and 44.104, Florida Statutes, respectively.
[2] Subsection (12) of section 44.304, Florida Statutes, was later renumbered as subsection (14) of section 44.104, Florida Statutes, and the language therein was expanded. However, the portions of the statute pertinent to the instant case remain unchanged.
[3] Words stricken are deletions and words underlined are additions.
[4] The arbitrator's award, however, is dated February 1, 2007; there is no record evidence to corroborate when the award was served on the parties.
[5] In fact, the former husband did not file his motion to vacate the arbitration award in the trial court until October 18, 2007, approximately seven months after he claims to have received the award (i.e. on March 10, 2007) and approximately six months after he instituted this appeal (i.e. on April 25, 2007).
[6] Moreover, any potential argument by the former husband that the arbitrator exceeded his powers in violation of section 682.13(1)(c) by adjudicating the child custody, visitation, and support issues would have necessarily failed as well. The Florida Supreme Court has construed subsection (c) to mean that an arbitrator exceeds his or her power when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration. See Schnurmacher Holding Inc., 542 So.2d at 1329. In this case, it is undisputed that the parties submitted all of the issues in this dissolution action, including those involving child custody, visitation, and child support, to arbitration in a written arbitration agreement. It simply cannot be said then that the arbitrator exceeded his powers pursuant to section 682.13(1)(c).
[7] In support of its holding, the majority cites to Nashid v. Andrawis, 83 Conn.App. 115, 847 A.2d 1098 (2004). With all due respect, that decision is neither persuasive, because it is factually dissimilar, nor binding upon this court. Nashid did not involve the vacation of an arbitration award. Rather, in Nashid, the court vacated a consensual provision in a divorce judgment that provided for the arbitration of any controversy involving the parties' parenting schedule. Based upon the plain error doctrine, the court concluded that this agreed-upon provision ran afoul of Connecticut General Statute Section 52-418(a) and was therefore an improper delegation of judicial authority. Thus, the Nashid court was not faced with the limited appellate review of an actual arbitrator's award as we are in this case.
[8] Indeed, in Schulberg, we pointed out that although some arbitration agreements may be subject to both section 44.104 and Chapter 682, there may be contrasting provisions in these statutes, which need clarification by the Florida Legislature. 883 So.2d 352, 356 n. 4.